IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELYN H. BOGGS, | No. CIV S-05-0917-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 23) and defendant's cross-motion for summary judgment (Doc. 26).

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

Plaintiff applied for disability insurance benefits on January 11, 2002, based on disability. In her application, plaintiff claims that her impairment began on October 23, 2001. Plaintiff claims her disability consists of a combination of "fibromyalgia, numbness and tingling in hands and feet, weakness, memory problems, headaches, depression, sleep disturbances, and fatigue." Plaintiff is a United States citizen born October 28, 1957, with a high school education.

Plaintiff's claim was initially denied. Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on June 11, 2003, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.

In his September 12, 2003, decision, the ALJ made the following findings:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in . . . the Social Security Act and is insured for benefits through the date of this decision;

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability;

3. The claimant has an impairment or a combination of impairments considered severe based on the requirements in the Regulations . . .;

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in [the Listings of Impairments];

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision;

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments;

7. The claimant has the following residual functional capacity: lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk six hours total and one hour continuously, sit without restriction, occasionally crouch, crawl or stoop, and occasional manipulation; she can perform simple repetitive with limited interaction with others consistent with a limitation to unskilled work;

8. The claimant is unable to perform any of her past relevant work;

9. The claimant is a younger individual between the ages of 45 and 49;

> 10. The claimant has a high school . . . education;
>
> 11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case;
>
> 12. The claimant has residual functional capacity to perform substantially all of the full range of medium work;
>
> 13. Based on an exertional capacity for medium work, and the claimant's age, education, and work experience, Medical-Vocational Rules 203.28-203.30, . . . would direct a conclusion of not disabled;
>
> 14. The claimant's capacity for medium work is substantially intact and has not been compromised by any non-exertional limitations; accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled; and
>
> 15. The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision.

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to benefits.

The Appeals Council granted plaintiff's request for review and, on December 19, 2003, issued an order vacating the ALJ's September 12, 2003, decision and remanding for further proceedings. In its order, the Appeals Council stated:

> The decision indicates that [the residual functional capacity] assessment is based on the evaluation of Dr. R. Jordan. However there is no rationale to reject the additional limitations to fingering only occasionally with either hand and only slow ability to perform fine motor finger tasks as well as environmental restrictions to limit exposure to dust, fumes, odors, chemicals and gases due to asthma. The Council finds that additional rationale is needed regarding the weight give[n] to the opinion evidence by treating and examining physicians as well as vocational expert (VE) evidence to determine if a significant number of other jobs exist that are consistent with the claimant's residual functional capacity.
>
> The ALJ rejected the claimant's testimony and that of her witnesses based, at least in part, on inconsistencies in the record. The claimant through her representative finds that the decision misstates her activities. The Council finds that this does not represent "bias" by the ALJ. However these perceived differences in the record should be further evaluated and resolved.

/ / /

/ / /

The Appeals Council directed the ALJ to do the following on remand:

1. Obtain additional evidence concerning the claimant's physical and mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence; the additional evidence may include, if warranted and available, consultative examinations and medical source statements about what the claimant can still do despite the impairments;

2. Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations; in so doing, evaluate the treating and examining source opinions . . . and non-examining source opinion . . ., and explain the weight given to such opinion evidence; the ALJ will request the treating and/or examining sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments;

3. Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms; and

4. Obtain evidence from a VE to clarify the effect of the assessed limitations on the claimant's occupational base; the hypothetical questions should reflect the specific capacity/limitations established by the record as a whole; the ALJ will ask the VE to identify examples of appropriate jobs, and to state the incidence of such jobs in the national economy; further, before relying on the VE evidence the ALJ will identify and resolve any conflicts between the occupational evidence provided by the VE and information in the Dictionary of Occupational Titles (DOT) and the companion publication, the Selected Characteristics of Occupations.

A second hearing was held on August 10, 2004. In his October 21, 2004, second decision, the ALJ made the following findings:[1]

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in . . . the Social Security Act and is insured for benefits through the date of this decision;

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability;

3. The claimant has an impairment or a combination of impairments considered severe based on the requirements in the Regulations . . .;

---

[1] Only findings 7, 13, and 14 are different.

4

  4. These medically determinable impairments do not meet or medically equal one of the listed impairments in [the Listings of Impairments];

  5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision;

  6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments;

  7. The claimant has the following residual functional capacity: the claimant is able to perform medium work, i.e., lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk one hour at a time to six hours total, sit six hours, perform postural activities except occasionally crouch, crawl or stoop, limited reach, handle or feel and occasional manipulation; due to an emotional disorder she can only perform simple repetitive tasks dealing with things rather than people consistent with a limitation to unskilled work in a low stress environment;

  8. The claimant is unable to perform any of her past relevant work;

  9. The claimant is a younger individual between the ages of 45 and 49;

  10. The claimant has a high school . . . education;

  11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case;

  12. The claimant has residual functional capacity to perform a wide range of medium work;

  13. Based on the vocational expert testimony, the claimant could work as an office helper, 239.567-010, light, unskilled, 16,000 jobs in California, 135,000 in the United States; and mail sorter, 209.687-026, light, unskilled, 14,000 in California, and 155,000 in the U.S.;

  14. The claimant's capacity for a wide range of medium work is substantially intact and has not been compromised by any non-exertional limitations; accordingly, based on the vocational expert testimony, the claimant is not disabled; and

  15. The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision.

Based on these findings, the ALJ again concluded that plaintiff was not disabled and, therefore, not entitled to benefits. After the Appeal Council denied review on March 14, 2005, this appeal followed.

///

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues: (1) the ALJ failed to correctly identify alternative jobs plaintiff could perform; and (2) the ALJ failed to comply with the Appeals Council remand.

/ / /

/ / /

### A. ALJ's Analysis of Alternative Jobs

Plaintiff asserts that the hypothetical questions the ALJ posed to the vocational expert did not accurately describe her limitations. Specifically, plaintiff argues that, while the ALJ accepted the opinion of consultative examining physician Rebecca Jordan, M.D., the hypothetical questions did not reflect Dr. Jordan's opinion that plaintiff was limited to only occasional bending.

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

As to plaintiff's residual functional capacity – which was the basis for the hypothetical questions posed to the vocational expert – the ALJ found:

> The claimant has the following residual functional capacity: the claimant is able to perform medium work, i.e., lift/carry 50 pounds occasionally and 25 pounds frequently, stand/walk one hour at a time to six hours total, sit six hours, perform postural activities except occasionally crouch, crawl or stoop, limited reach, handle or feel and occasional manipulation. Due to an emotional disorder she can only perform simple repetitive tasks dealing with things rather than people consistent with a limitation to unskilled work in a low stress environment.

Other than to assert that the ALJ failed to include a limitation for only occasional bending, plaintiff does not challenge this finding, or the bases for it. As to plaintiff's contention that the description of her residual functional capacity fails to include a limitation for only occasional bending, the court disagrees. The ALJ clearly identified as a restriction "occasionally crouch,

crawl or stoop." The court agrees with defendant's observation that there is no functional difference between crouching, stooping, and bending. In fact, Dr. Jordan's written assessment of plaintiff's abilities – upon which the ALJ relied and which plaintiff does not challenge – discusses bending, stooping, and crouching in the same sentence. In sum, the court finds that these are all really just different ways of describing the same activity. Plaintiff's argument that the ALJ failed to include a bending limitation in the hypothetical questions posed to the vocational expert is unpersuasive.

      B.    **ALJ's Compliance with Remand Order**

Plaintiff contends that the ALJ failed to comply with the Appeals Council's directive on remand that, ". . . before relying on the [vocational expert] evidence the ALJ will identify and resolve any conflicts between the occupational evidence provided by the [vocational expert] and information in the Dictionary of Occupational Titles (DOT) and the companion publication, the Selected Characteristics of Occupations." Specifically, plaintiff argues: ". . . The ALJ failed to ask the vocational expert if there were any conflicts between the occupational evidence provided by the vocational expert in her testimony."

The court is not entirely certain what plaintiff argues the ALJ did wrong. Plaintiff states the ALJ failed to inquire as to the difference between the vocational expert's testimony and . . . what? Plaintiff does not say. Presumably, given a hint by the Appeals Council language plaintiff quotes, plaintiff is asserting that the ALJ failed to ask about inconsistencies between the vocational expert's testimony and the DOT. If this is plaintiff's argument, it is unpersuasive. The plain language of the Appeals Council's remand order plaintiff quotes clearly states that the ALJ must do two things: (1) identify any conflicts between the vocational expert's testimony and the DOT; and (2) resolve such conflicts. The ALJ was not specifically required to ask the vocational expert about any conflicts identified.

/ / /

/ / /

1       Moreover, having carefully reviewed the ALJ's second decision, the court cannot find any references to the DOT or any of its companion publications.  In fact, an analysis of the two hearing decisions reflects that, while the ALJ relied on the DOT in the first decision, he relied instead on vocational expert testimony in the second.  Therefore, the ALJ's second decision does not identify any conflict between the vocational expert's testimony and the DOT.  As such, there was nothing to resolve.

### IV.  CONCLUSION

      Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

      1.     Plaintiff's motion for summary judgment is denied;

      2.     Defendant's cross-motion for summary judgment is granted; and

      3.     The Clerk of the Court is directed to enter judgment and close this file.

DATED:  June 2, 2006.

                                      **CRAIG M. KELLISON**
                                      UNITED STATES MAGISTRATE JUDGE